STRANGE *et al. v.* BARNEY, Collector of Customs.

(*Circuit Court, S. D. New York.* May 23, 1888.)

1. CUSTOMS DUTIES—PROTEST—TIMELINESS.
   When a sum of money has been paid by an importer for duties on his importations, as estimated at the times of his entry thereof, and subsequently the duties thereon are duly liquidated at higher rates in the case of some of these importations, and at lower rates in the case of others, but at a less sum than the sum already paid, a protest, made after such payment and before the liquidation, against the exaction of a portion of the duties at one of the liquidated rates, is made before the payment thereof within the terms of the protest act of February 26, 1845, (5 U. S. St. p. 727, § 1, c. 22.)

2. SAME—DISCRIMINATING DUTY.
   "Silk in the gum, not more advanced in manufacture than tram, and thrown, or organzine," when so advanced in England from "silk raw, or as reeled from the cocoon, not being doubled, twisted, or advanced in manufacture in any way," which has been produced in a country beyond the Cape of Good Hope, and thence imported into England, under the fourteenth section of the act of July 14, 1862, (12 U. S. St. 543,) or when so advanced in England from "silk raw, or as reeled from the cocoon, not being doubled," etc., which has been produced in a country this side of that cape, and thence imported into England, under the third section of the act of August 5, 1861, (Id. 292,) is, on being imported from England to the United States, liable to a discriminating duty of 10 per cent. *ad valorem* in addition to the duty imposed by the second section of the aforesaid act of August 5, 1861.

3. SAME.
   The advancing, in England, to tram, thrown, and organzine, of "silk raw, or as reeled from the cocoon, not being doubled," etc., which has been produced in another country, does not cause it to cease to be the produce of such other country.

At Law. Action to recover payments of customs duties.

The firm of E. R. Strange & Bro. imported from London, England, into the port of New York certain "China tram," "Canton tram," and "China organzine," by the Persia, July 22, 1863; certain "Italian thrown silk,"

by the Etna, September 23, 1863; and certain "Japan organzine," by the
Scotia, August 2, 1863. The defendant, Hiram Barney, as collector of
customs, upon the return of the appraiser that these importations were
"silk in the gum, not further advanced than tram or organzine from be-
yond the Cape of Good Hope," classified them for duty, and exacted
thereon duty at the rate of 25 per cent. *ad valorem*, under the provision
for "silk in the gum not more advanced in the manufacture than singles,
tram, and thrown, or organzine," contained in section 2 of the act of
August 5, 1861, (12 U. S. St. at Large, 292,) and in addition thereto
a further and discriminating duty of 10 per cent. *ad valorem* as being of
the growth or produce of countries beyond the Cape of Good Hope, im-
ported from a place this side of it, under section 14 of the act of July
14, 1862, (Id. 543,) which provided that "from and after the day and
year aforesaid" (August 1, 1862) "there shall be levied, collected, and
paid on all goods, wares, and merchandise of the growth or produce of
countries beyond the Cape of Good Hope, when imported from places
this side of the Cape of Good Hope, a duty of 10 per cent. *ad valorem*,
and in addition to the duties imposed on any such articles when im-
ported from the place or places of their growth or product." Section 3
of the act of August 5, 1861, (Id. 292,) also provided that "all articles,
goods, wares, and merchandise imported from beyond the Cape of Good
Hope in foreign vessels not entitled by reciprocal treaties to be exempt
from discriminating duties, tonnage, and other charges; and all other
articles, goods, wares, and merchandise not imported direct from the
place of their growth or production, or in foreign vessels entitled by re-
ciprocal treaties to be exempt from discriminating duties, tonnage, and
other charges, shall be subject to pay in addition to the duties imposed
by this act, ten per centum *ad valorem*," etc. Against the exaction of
this discriminating duty of 10 per cent. *ad valorem*, and under the act of
February 26, 1845, (5 U. S. St. p 727, § 1, c. 22,) which required, be-
sides other things, that a protest against the exaction of duties should
be made at or before the payment thereof, the said firm protested, claim-
ing that under existing laws the importations in suit were only liable to
a duty of 25 per cent. *ad valorem*, as those by the Persia and Scotia were
of "English manufacture," and those by the Etna of "Italian manufact-
ure," and entirely changed in their character and condition by being
made in into tram and organzine. February 1, 1864, said firm brought
this suit to recover this discriminating duty. Subdivision 21, § 2, act
July 14, 1832, (4 U. S. St. 589,) levied duty on "raw silk." Subdivis-
ion 2, § 3, act Aug. 30, 1842, (5 U. S. St. 550,) levied duty "on raw
silk, comprehending all silks in the gum, whether in hanks, reeled, or
otherwise." Schedule F of the act of July 30, 1846, (9 U. S. St. 42,)
levied duty on "silk raw, not more advanced in manufacture than sin-
gles, tram, and thrown, or organzine." Schedule I of the act of March
3, 1857, (11 U. S. St. 192,) section 23 of the act of March 2, 1861, (12
U. S. St. 178,) and section 2505, Rev. St. U. S. exempted from duty
"silk raw, or as reeled from the cocoon, not being doubled, twisted, or
advanced in manufacture any way," and the last two acts also "silk co-

coons, and silk waste." Section 16 of the act of March 2, 1861, (*supra*,) levied duty "on silk in the gum, not more advanced in manufacture than singles, tram, and thrown, or organzine;" also section 2 of the act of August 5, 1861, (12 U. S. St. 292,) Schedule H of section 2504, Rev. St. U. S., and section 1 of the act of February 8, 1875, (18 U. S. St. 307.) Section 6 of the act of March 3, 1865, (13 U. S. St. 491,) exempted from discriminating duty "raw silk, as reeled from the cocoon, or not further advanced than tram, thrown, or organzine;" and the precise phraseology quoted is found in section 3 of the act of June 6, 1872, (17 U. S. St. 230,) the act of May 4, 1882, (chapter 120, 22 U. S. St. 58,) and in the act of December 23, 1882, (chapter 6, 22 U. S. St. 398.) Upon the trial had on February 1 and 2, 1888, it appeared from the entry by the Persia, of July 22, 1863, produced from the custom-house, that besides the China and Canton tram, and China organzine, there were also imported by that vessel certain silk velvets and other goods; that said tram and organzine was entered as dutiable at the rate of 25 per cent. *ad valorem*, and the velvets, as valued at over three dollars per square yard, and the other goods as dutiable at 40 per cent. *ad valorem;* that duties thereon at these rates, and amounting to the sum of $3,812.80, were paid July 25, 1863; that at about August 11, 1863, the said tram and organzine were returned by the appraiser as from beyond the Cape of Good Hope, as aforesaid, and therefore subject to a discriminating duty of 10 per cent. *ad valorem*, in addition to the 25 per cent. *ad valorem* already imposed; a part of said velvets as under three dollars per square yard in value, and therefore dutiable at 30 per cent. *ad valorem*, instead of 40 per cent., as already paid; and the remaining goods as dutiable at 40 per cent. *ad valorem*, as already paid; that thereafter the collector re-estimated the duties on all of these importations in accordance with the return of the appraiser, and at the sum of $3,561.30, or by $251.50 less than the amount paid July 25, 1863; that as shown by the stamp on said entry, the duties were liquidated, the said firm notified of such liquidation, and the said sum of $251.50 refunded to them, October 29, 1863. The protest attached to the entry by the Persia, on which the plaintiffs relied to recover the discriminating duty, was dated August 13, 1863, or 19 days after the original payment of $3,812.80, on July 25, 1863. It also appeared from the evidence of plaintiffs' witnesses that the importations in suit were purchased by said firm of the firm of Francis Bennoch & Co., of London, England, which in 1863 was the great center of the silk trade; that said firm of Francis Bennoch & Co., were not manufacturers, but commission merchants. That said firm of E. B. Strange & Bro. did not, in 1863, import tram or organzine from China or Japan, and were in 1863 manufacturers of certain ribbons known as the "Compass brand," and other well-known silk goods; that "tram" is produced by taking from four to six fibers of silk, as reeled from the cocoon of the silk worm, soaking them to soften the gum, and putting them together so that by their adhesion they form a thread, and then by twisting two such threads together; that "organzine" is produced by taking two of such threads, and first twisting each thread by itself,

and then twisting together the two so twisted; that the term "thrown silk" includes both "tram" and "organzine;" that the advancing of the silk fibers to tram and organzine forms a distinct industry, is done by complicated and expensive machinery, occupies about four days, and increases the value of the silk about 20 per cent.; that at a little distance it is impossible to distinguish with the eye the silk fibers "tram" and "organzine" apart, though they are readily distinguished by the touch; that the words "China," "Canton," "Japan," and "Italian," etc., as used in the phrases "China tram," "China organzine," etc., in 1863, and prior thereto, indicated the country or place in which the silk fibers were reeled from the cocoon, but not the country or place where they were advanced to "tram" or "organzine;" that in those years these fibers were so advanced in this country, in England, France, and Italy; that in those years "tram," before it was fit to be used in manufacturing silk goods, was boiled, to take the gum out, dyed and wound and quilled; and "organzine" boiled, dyed, wound, and warped; that an expert was able in 1863 to tell in what country any particular "tram" or "organzine" was thrown, or advanced from the silk fibers as reeled from the cocoon, etc., after such "tram" or "organzine" had been manufactured into silk goods; that while "tram" and "organzine" was so thrown or advanced in China and Japan, the ribbons known as the "Compass brand," and other silk goods manufactured by the said firm of E. B. Strange & Bro., in 1863, could not be made out of such "tram" and "organzine;" and that, in fact, in 1863 such "tram" and "organzine" was not imported into this country from China and Japan; that there is no difference in the articles described by the phrase "silk, raw, not more advanced in manufacture than * * * tram * * * or organzine," contained in Schedule F of the act of July 30, 1846; and the phrase "silk in the gum not more advanced in the manufacture than * * * tram * * * or organzine," contained in the aforesaid act of August 5, 1861; that in fact all "raw silk" is "silk in the gum," but that in trade and commerce "raw silk" is never called "silk in the gum," because it goes without saying. Both sides having rested, the defendant's counsel moved the court to direct the jury to find for the defendant as to the importation by the Persia, on the ground that the said firm of E. B. Strange & Bro. paid their money in the case of that importation on July 25, 1863, and the protest on which they relied as to the same, as appears by its date, not having been made until August 13, 1863, was not made at or before such payment, as required by the aforesaid protest act of February 26, 1845.

Lacombe, J., (*orally*.) The facts here show that on July 25, 1863, there was a sum of money paid to the collector, which represented 40 per cent. duty on some goods, velvets and others, and 25 per cent. duty only on "tram" and "organzine," but no charge of a discriminating duty of 10 per cent. was then made. On or about August 11, 1863, it was made by one of the subordinates of the custom-house on liquidating the entry, and was then for the first time charged. It was thereafter paid, not by the importers paying any more money, but by taking from a credit

which was created for them on that day by reducing the amount which they had paid on other goods, a sufficient sum to pay this. Now, that is an entirely different state of affairs from the case where the importer of goods pays originally an estimated duty in excess of what he ought to pay, and subsequently, upon a liquidation, it is found that he paid too much. The overpayment here was not on these goods, and he never paid, in any sense, a discriminating duty on the "tram" and "organzine" in suit, until the money was produced to pay such duty, not out of the proceeds of the duties estimated and paid in anticipation of what they should be, but out of other duties on other goods. I think, therefore, in view of the fact that that protest is dated August 13th, that upon the evidence the liquidation must have gone to the naval office, and come back to the collector, and, further, that it is stamped with the official stamp of the collector as of October 29th, that this protest is in time. I shall therefore deny the motion on that ground.

The defendant's counsel then moved the court to direct the jury to find a verdict in his favor as to all the importations in suit, on the ground—*First*, that there was no proof in the case that the "tram" and "organzine" comprising the same was thrown in England; and, *second*, that these importations being "silk in the gum, not more advanced in manufacture" than "tram" and "organzine," are not, within the purview of the statute of the United States, new and distant articles made out of "silk raw, or as reeled from the cocoon," but are merely such "raw silk" subjected to a few processes which have changed its condition only, and not its identity as "raw silk."

LACOMBE, J., (*orally*.) The sixteenth section of the act of March 2, 1861, and the second section of the act of August 5, 1861, provides for duty on "silk in the gum, not more advanced in manufacture than singles, tram, and thrown, or organzine." Is not that a statutory definition of what these particular articles are, to-wit, that they are incomplete manufactures, and are not other or different in the meaning of congress than silk in the gum, and that therefore, if silk in the gum is a growth or produce of a country east of the Cape of Good Hope, it does not cease to be silk in the gum by being advanced to singles, to tram, or to organzine. Now, if that be so, it does not make any difference where it is advanced to singles, tram, or organzine, whether in the country of its growth or produce or elsewhere. I therefore direct the jury to find a verdict for the defendant.

---

Subsequently plaintiffs make a motion to set aside this verdict and for a new trial.

*Samuel B. Clarke* and *Wm. B. Coughtry*, for plaintiffs.

The expressions, "China tram," "China organzine," etc., do not mean "tram" or "organzine" that was made in China, but mean tram or organzine made of China silk, wherever made. There was evidence for the jury that the "tram" and "organzine" in suit were not produced beyond the Cape of Good

Hope. The change of "raw silk" to "tram" and "organzine" is a material change in the character of the articles: (1) It is a process that takes several days to complete; (2) it requires complicated and expensive machinery; (3) it is a distinct industry; (4) silk in the raw state is indifferently applicable to all the various purposes for which silk is used, but in the process of conversion into "tram" and "organzine" regard is had to the sort of fabric in which the "tram" and "organzine," when made, is to be used; (5) the effect of the change, besides increasing the value of the silk about 20 per cent., is to give the article a new trade name. "Silk, as reeled from the cocoon," is known in the trade as "raw silk," but that term is never applied to it after it has been thrown. It is then called "tram," "organzine," "thrown," etc. The making of "raw silk" into "tram" and "organzine" does not merely change its character commercially. It also changes its dutiable or statutory character. At the time of the importations in suit "silk raw or as reeled from the cocoon, not being doubled, etc., and silk cocoons and silk waste" were free of duty. Section 23, act March 2, 1861. By section 2 of the act of March 3, 1863, it was proved that the discriminating duty of section 14 of the act of 1862 should not apply to "raw silk as reeled from the cocoon, of the growth or produce of countries beyond the Cape of Good Hope." The very act (of March 2, 1861) which made raw silk free, places by its sixteenth section a duty of 15 per cent. "on silk in the gum, not more advanced in manufacture than singles, tram, and thrown, or organzine." Section 2 of the act of August 5, 1861, increased that duty to 25 per cent., but left "raw silk" free. The statutes since the act of 1857 have made a clear and sharp discrimination between "raw silk as reeled from the cocoon" on the one hand, and "tram" and "organzine" on the other. In making this discrimination congress did but conform to physical facts and trade usages. The ground upon which the court directed a verdict in favor of the defendant appears to be that the language used by congress indicates that the importations in suit are incomplete manufactures, and not other or different in the meaning of congress than "silk in the gum," and that therefore, if "silk in the gum" is a growth or a product of a country east of the Cape of Good Hope, it does not cease to be "silk in the gum" by being advanced to "singles," to "tram," or to "organzine." The fallacy which this reasoning contains, plaintiffs' counsel respectfully submits, lies in the assumption that all "silk in the gum" has one dutiable or statutory character. But the statutes show that this is not so. "Silk in the gum as reeled from the cocoon" was free of duty generally by the act of 1861, and, when produced in countries beyond the cape, it was free of the discriminating duty specifically by the act of 1863; but silk in the form of "tram" and "organzine" was dutiable; hence in the eye of the law, the change from "raw silk" to "tram" and "organzine" was a change of dutiable or statutory character. In the case at bar the evidence warranted the jury in finding that the change from "raw silk" to "tram" and "organzine" was not made beyond the Cape of Good Hope, and, therefore, that these goods were not of the growth or produce of a country beyond the cape, and were not subject to the discriminating duty of 10 per cent. In some respects the following cases are similar to the one at bar: *Arthur* v. *Herold,* 100 U. S. 75; *Recknagel* v. *Murphy,* 102 U. S. 197.

*Stephen A. Walker,* U. S. Atty., and *Thomas Greenwood,* Asst. U. S. Atty., for defendant.

"Tram," as well as "organzine," is, in fact, "raw silk," or "silk in the gum," whose identity has not been so lost by the processes it has undergone that it ceased to be the original article. They both, therefore, are neither articles manufactured in England or Italy, nor articles imported direct from the place of their growth or product. *Recknagel* v. *Murphy,* 102 U. S. 197; *Will-*

*iams* v. *Barney*, 5 Blatchf. 219. An examination of the United States statutes from 1842 to 1882, both inclusive, shows that congress throughout them has always regarded "raw silk," "silk raw as reeled from the cocoon," "raw silk, or as reeled from the cocoon, not being doubled, twisted, or advanced in manufacture any way," and "silk raw, or silk in the gum, not more advanced in manufacture than tram or organzine," not as separate articles, but as the same article, viz., "raw silk" in different conditions. Section 2 of the act of March 3, 1863, which exempted from discriminating duty "raw silk as reeled from the cocoon," of the growth or produce of countries beyond the Cape of Good Hope, when imported from places this side of that cape, does not affect "tram" and "organzine," as contended by plaintiffs; for they are not "raw silk" in its condition "as reeled from the cocoon," but in a different condition. That section says, in effect, to the importer, so long as you import from places this side of the Cape of Good Hope "raw silk" in its condition "as reeled from the cocoon," which is of the growth or produce of countries beyond that cape, you will be liable to no discriminating duty thereon; but if in places this side of that cape you advance "raw silk" in that condition to some other condition, such as "tram" or "organzine," then the discriminating·duty will be levied under section 14 of the act of 1862, in precisely the same manner as if the act of March 3, 1863, had never been passed.

LACOMBE, J., (*after stating the facts as above.*) Careful examination of the exhaustive briefs submitted by the plaintiffs upon this motion for a new trial has not changed the opinion expressed on the trial. The plaintiffs are quite correct in their inference that the decision then rendered was founded upon the assumption that the language used by congress indicates that the importations in suit are incomplete manufactures, and that, despite the labor bestowed upon them, they are still but varieties of the growth or product whose generic name is "raw silk," or whose generic name is "silk in the gum." He misapprehends the decision, however, when he paraphrases the assumption as being "that all silk in the gum has one dutiable or statutory character." The decision was not influenced by any assumption as to rates of duty, but because the manner in which congress expressed itself seemed to indicate quite clearly what it understood to be the result and effect of the labor bestowed upon these articles, and which advanced them to "tram," "organzine," etc. Sufficient indications of such understanding are found in the acts in force when these importations were made. Act of March 2, 1861, § 16. "On silk in the gum, not more advanced in manufacture than singles, tram, and thrown, or organzine," 15 per cent. duty. Clearly this indicates that silk in the gum does not lose its generic character by being advanced to singles, tram, and thrown, or organzine. Id. § 23. "Silk raw, or as reeled from the cocoon, not being doubled, twisted, or advanced in manufacture in any way, and silk cocoons and silk waste," are put on the free list. Here are four enumerated varieties: (1) Raw silk, pure and simple; (2) raw silk, as reeled from the cocoon; (3) silk cocoons; and (4) silk waste. The qualification "not being doubled, twisted," etc., which is coupled with the first two, indicates that congress supposed that unless these words were added the importers of silk thus advanced might successfully claim that the article they brought in was still "silk raw, or as reeled from the cocoon." The act of August 5, 1861, advancing the

duty on silk in the gum to 25 per cent., is in the same language as section 16 above quoted from. The act of March 3, 1863, § 2, amends a prior act so as to allow "cotton and raw silk, as reeled from the cocoon," to be in certain cases free of discriminating duty. This refers only to the same article described in section 23 above quoted. It might, no doubt, be urged that, being used here without the qualifying words of the earlier act, the meaning of this phrase is broad enough to cover cases where the article is advanced to "singles," "tram," "thrown," etc. In view, however, of the fact that the words "silk in the gum" do not appear in the later act, and of the evidence in the case which seems to indicate that there is no difference between "silk raw advanced to tram," etc., and "silk in the gum advanced to tram," etc., the point is too narrow to justify plaintiff's recovery.